IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LISA A. BELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. CIV-12-124-SPS |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,[1] ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

The claimant Lisa A. Bell requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her applications for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. As discussed below, the Commissioner's decision is REVERSED and the case REMANDED to the ALJ for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such

---

[1] On February 14, 2013, Carolyn Colvin became the Acting Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Colvin is substituted for Michael J. Astrue as the Defendant in this action.

severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence has been interpreted by the United States Supreme Court to require "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v.*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*NLRB*, 305 U.S. 197, 229 (1938). The Court may not reweigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was born on October 15, 1970, and was forty years old at the time of the administrative hearing (Tr. 34). She has a ninth grade education and past relevant work as a nurse's aide (Tr. 22, 34). The claimant alleges she has been unable to work since May 5, 2007, because of degenerative disc disease, knee problems, morbid obesity, and depression (Tr. 191).

### Procedural History

The claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on February 8, 2010. Her applications were denied. ALJ Trace Baldwin conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated August 24, 2011. The Appeals Council denied review, so the ALJ's written opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981; 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work, 20 C.F.R. §§ 404.1567(a); 416.967(a), limited to simple, routine tasks and avoiding working with the general public (Tr. 16-18). The ALJ found that although the claimant could not return to any of her past relevant work, she was nevertheless not disabled because there was other work she could perform, *i. e.*, semi-conductor and optical goods assembler (Tr. 23-25).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze the medical evidence of record, *i. e.*, the opinion of her treating physician, Dr. Michael J. Irvin; (ii) by failing to properly analyze her obesity; and (iii) by failing to consider her non-severe impairments of knee and upper extremity numbness at step four. The Court finds the claimant's second contention persuasive.

The record reveals that the claimant began receiving treatment from Dr. Michael Irvin on April 17, 2008 (Tr. 282). In July 2008, the claimant presented with complaints of knee pain, and Dr. Irvin noted that her gait was unsteady and that the claimant was using an assistive device (Tr. 280). Because of the claimant's continued complaints of knee pain, Dr. Irvin referred her for an MRI which revealed that the claimant had a suspected tear in the posterior horn of her medial and lateral meniscus (Tr. 272). As a

result, the claimant underwent a left knee arthroscopy with partial medial and lateral meniscectomy as well as a partial chondroplasty of the trochlear groove and medial femoral condyle (Tr. 254).  The claimant complained of numbness in her right arm from the elbow to the hand in December 2008.  Finally, in June 2011, the claimant presented with complaints of low back pain in the cervical and lumbar spine.  The claimant related that the back pain was "constant, moderate in intensity, sharp, and dull" (Tr. 327).  Dr. Irvin noted that the pain was chronic and aggravating factors included lifting, bending over, and twisting (Tr. 327).

   The claimant presented to state physician Dr. Gordon Strom, Jr., M.D. for a physical examination on May 6, 2010 (Tr. 284-86).  Dr. Strom noted that the claimant was morbidly obese and had documented degenerative changes in her back (Tr. 284).  The claimant stated that she was unable to sit or stand, could walk short distances with difficulty, and had difficulty breathing at night (Tr. 284).  The claimant also complained of tingling and dysthesia in both arms when she is lying down (Tr. 285).  Upon examination, Dr. Strom found that the claimant was short of breath even at rest, and "[s]he had difficulty lying recumbent without experiencing shortness of breath" (Tr. 285).  Dr. Strom noted that the claimant had difficulty with flexion and extension of her back because of her obesity, and she had crepitus bilaterally with tenderness in both knees (Tr. 285).  Following the examination, Dr. Strom suspected that the claimant had a distal compressive neuropathy involving her brachial plexus bilaterally, degenerative back disease, and degenerative joint disease involving both knees (Tr. 286).  Further, Dr.

Strom noted that she had a classic dumping syndrome (Tr. 286). Dr. Strom's impression was morbid obesity, compressive neuropathy involving both arms, prior gallbladder surgery with dumping syndrome, an degenerative disc disease involving the lumbar spine without radiculopathy (Tr. 286). Finally, Dr. Strom noted that unless the claimant lost weight, her back pain, dumping syndrome, or hand and arm tingling would be unlikely to improve (Tr. 286).

State reviewing physician Dr. Luther Woodcock, M.D. completed a Physical Residual Functional Capacity Assessment in which he opined that the claimant was capable of occasionally lifting and/or carrying up to 10 pounds, frequently lifting and/or carrying less than 10 pounds, stand and/or walk at least two hours in an eight-hour workday, and sit for about six hours in an eight-hour workday (Tr. 317).

The claimant's treating physician Dr. Irvin also completed a Medical Source Statement in which he opined that the claimant could frequently lift and/or carry less than 10 pounds, occasionally lift and/or carry less than 10 pounds, stand and/or walk less than two hours in an eight-hour workday, and sit for less than two hours in an eight-hour workday (Tr. 331). Further, Dr. Irvin wrote that the claimant could never climb or crawl, and could only occasionally balance, stoop, kneel, crouch, reach, handle, finger, and feel (Tr. 332). Dr. Irvin also submitted a letter dated June 20, 2011 in which he stated that the claimant's multiple medical conditions, including chronic low back pain, rendered her unable to lift, pull, or push and requires her to take frequent rest periods (Tr. 334). Dr. Irvin submitted a second letter dated December 15, 2010 in which he stated that the

claimant was "unable to seek gainful employment due to her medical conditions" (Tr. 335).

State agency psychologist Dr. Theresa Horton, Ph.D. evaluated the claimant on May 18, 2010 (Tr. 291). She told Dr. Horton that she had experienced problems with depression for four years (Tr. 291). The claimant also reported that she quit her last job when she was unable to do simple tasks such as mopping or light cleaning (Tr. 292). She told Dr. Horton that she "often does not feel like getting out of bed or bathing" (Tr. 293). Dr. Horton noted that the claimant's mood was depressed and her affect was congruent and restricted (Tr. 294). Dr. Horton's diagnosed her with major depressive disorder, recurrent, severe, chronic pain, and morbid obesity (Tr. 294).

State agency physician Dr. Tom Shadid reviewed the claimant's medical records and completed a Psychiatric Review Technique (PRT) form on June 17, 2010 (Tr. 298-311). Dr. Shadid opined that the claimant exhibited symptoms of a depressive order characterized by appetite disturbance with change in weight, sleep disturbance, decreased energy, and feelings of guilt or worthlessness (Tr. 301). As a result, Dr. Shadid found that the claimant had moderate limitations in activities of daily living, maintaining social functioning, maintaining concentration, persistence, or pace, and she had experienced one or two episodes of decompensation (Tr. 308). Dr. Shadid also completed a Mental Residual Functional Capacity Assessment (Tr. 312-15). Dr. Shadid opined that the claimant was markedly limited in the ability to understand and remember detailed

instructions, ability to carry out detailed instructions, and ability to interact appropriately with the general public (Tr. 313).

The claimant contends that the ALJ erred, *inter alia*, by failing to properly analyze evidence of her obesity. Obesity is a medically determinable impairment often associated with disturbance of the musculoskeletal system, which be a major cause of disability. The Listing of Impairments references obesity and explains that "[t]he combined effects of obesity with musculoskeletal impairments can be greater than the effects of each of the impairments considered separately." The ALJ must therefore "consider any additional and cumulative effects of obesity" when assessing an individual's residual functional capacity. 20 C.F.R. pt. 404, subpt. P, app. 1, Part A, 1.00 Musculoskeletal System.

In this case, the ALJ found that the claimant's obesity was a severe impairment at step two that did not meet a listing at step three (Tr. 15-16). But at step four, the ALJ made only the following reference to the claimant's obesity:

> In regards to her obesity, she has struggled with obesity since the age of 10 years old (Exhibit 5F). She was found eligible for gastric bypass surgery but lost her medical card and was not able to get treatment. She has been advised to lose weight and according to the records, she has had some recent success with losing weight. She was noted to weight over 350 pounds at her consultative examination in May 2010 and testified at the hearing that she currently weighed 310 pounds, approximately a 40-pound weight loss in a year.

(Tr. 20). The ALJ did not, for example, discuss how the claimant's obesity specifically affected her other severe impairments, *see, e. g., Hamby v. Astrue*, 260 Fed. Appx. 108, 112 (10th Cir. 2008) (discussing the requirements of Soc. Sec. Rul. 02-01 and noting that

-8-

"the ALJ provided no discussion of the effect of obesity on Ms. Hamby's other severe impairments."), or explain what (if any) limitations he included in the RFC corresponding to the claimant's obesity.

It is not entirely clear, but the ALJ seemed to suggest that he was discounting the disabling nature of the claimant's obesity because she failed to follow the recommended medical treatment, *i. e.*, gastric bypass surgery and losing weight.  If this is what the ALJ intended, he should have fully analyzed the evidence under *Frey v. Bowen*, 816 F.2d 508 (10th Cir. 1987), by applying the following factors:  (i) whether treatment would have restored the claimant's ability to work; (ii) whether treatment was prescribed; (iii) whether treatment was refused; and, (iv) whether the excuse was justified.  816 F.2d at 517, *citing Weakley v. Heckler*, 795 F.2d 64, 66 (10th Cir. 1986), *quoting Teter v. Heckler*, 775 F.2d 1104, 1107 (10th Cir. 1985).

The Commissioner argues that the claimant failed to put forth evidence indicating that her obesity limits her beyond the ALJ's RFC findings.  But there *is* evidence that the claimant's obesity was limiting.  Dr. Strom noted that the claimant had a "great deal of difficulty flexing and extending her back because of her obesity[,]" difficulty breathing because of her obesity, and joint pain when standing, stooping, or bending (Tr. 285-86). In any event, if the ALJ did conclude that the claimant's obesity (a severe impairment at step two) required no limitations in her RFC at step four, he should have explained this conclusion in detail.  *See, e. g., Timmons v. Barnhart*, 118 Fed. Appx. 349, 353 (10th Cir. 2004) (finding "the ALJ should have explained how a 'severe' impairment at step two

became 'insignificant' at step five."). Because he did not, the Commissioner's decision must be reversed and the case remanded for further analysis of the claimant's obesity.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and that the decision of the Commissioner decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 30th day of September, 2013.

_____
Steven P. Shreder
United States Magistrate Judge
Eastern District of Oklahoma